IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JIM HOOD, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI,
ex rel. THE STATE OF MISSISSIPPI                                           PLAINTIFF

v.                                                    CIVIL ACTION NO. 1:12-CV-00179-GHD-DAS

BRISTOL-MYERS SQUIBB COMPANY;
SANOFI-AVENTIS U.S. L.L.C.; SANOFI-AVENTIS, U.S., INC.;
And SANOFI-SYNTHELABO, INC.                                            DEFENDANTS

MEMORANDUM OPINION DENYING
PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT

Presently before the Court is Plaintiff's motion to remand [22] the case *sub judice* to state court for lack of subject matter jurisdiction. Defendants oppose the motion to remand. The parties have filed materials supporting their positions, and oral argument was held on April 4, 2013. Upon due consideration, the Court finds that the motion to remand should be denied, because the case was properly removed on the bases of diversity jurisdiction and jurisdiction under the Class Action Fairness Act ("CAFA").

*A. Factual and Procedural Background*

On June 29, 2012, Plaintiff, Attorney General of the State of Mississippi ("Plaintiff"), filed suit in the Circuit Court of Chickasaw County, Mississippi against Defendants, Bristol-Myers Squibb Company; Sanofi-Aventis U.S., LLC; Sanofi-Aventis U.S., Inc.; and Sanofi-Synthelabo, Inc. (collectively, "Defendants"). In the original complaint, Plaintiff alleges that Defendants unfairly, falsely, and deceptively labeled and promoted the prescription drug Plavix® (clopidogrel bisulfate) to consumers and healthcare providers. Specifically, Plaintiff asserts that Defendants' marketing strategy was designed to replace aspirin with Plavix® as a treatment for

1

patients at risk of stroke and related ischemic events. Pl.'s Compl. [2] ¶ 1.1. Plaintiff alleges that Defendants ignored, concealed, and minimized clinical data and other information showing that Plavix® is only as effective as—or in some cases even less effective than—aspirin in treating such patients. *Id.* Plaintiff further alleges that Defendants falsely marketed Plavix® as a drug more effective than aspirin and other competitor products. *Id.* ¶ 1.2. Plaintiff avers that Defendants have also falsely marketed Plavix® as a more effective and safe drug for uses for which the drug had not been shown to be effective and safe. *Id.* ¶ 1.3. Plaintiff further avers that Defendants failed to disclose that a significant percentage of the patient population is genetically predisposed to have a substantially diminished response to Plavix® or no response at all, and that Defendants knew that disclosure of such information would lead to a reduction in the number of prescriptions written for Plavix® and thus a decline in Plavix®'s sales and revenue. Plaintiff sues exclusively under the Mississippi Consumer Protection Act (the "MCPA") and seeks several remedies, including (1) civil penalties, (2) disgorgement in equity, and (3) injunctive relief. *Id.* ¶¶ 1.6–1.7.

On August 17, 2012, Defendants removed the suit to this Court on the claimed bases of diversity jurisdiction, federal question jurisdiction, and/or jurisdiction under CAFA pursuant to 28 U.S.C. § 1332(d). On September 17, 2012, Plaintiff filed a motion to remand [22] the action to state court for lack of subject matter jurisdiction, as well as an amended complaint [24]. Defendants filed a response in opposition to the motion to remand. Plaintiff filed a reply in support of its motion to remand.

Meanwhile, on October 15, 2012, Defendants notified this Court of their filing with the United States Judicial Panel on Multidistrict Litigation (the "Panel") a renewed motion to transfer the action to a single judge for coordinated or consolidated pretrial proceedings pursuant

to 28 U.S.C. § 1407.[1] Defendants had filed a prior motion to transfer with the Panel relating to other Plavix® litigation; the Panel had denied that transfer motion on December 14, 2011. Plaintiff filed an opposition to the renewed transfer motion with the Panel. Defendants filed a motion to stay proceedings in this Court pending the Panel's transfer decision [43]; this Court granted the requested stay in a memorandum opinion [51] and Order [50] dated January 2, 2013. Subsequently, the Panel entered a Transfer Order denying the request for transfer to the United States District Court for the District of New Jersey. However, the Panel stated in the Order that the Panel was in agreement with Defendants that the litigation had expanded dramatically since the initial denial of the transfer request and denied without prejudice the transfer request, to await rulings on the motions to remand pending in several transferor courts, including this Court.

On April 4, 2013, this Court held a hearing on the pending motion to remand. On June 7, 2013, the Panel entered a Conditional Transfer Order ("CTO") stating that the case *sub judice*, along with several others, would be transferred to MDL, because the cases "involve questions of fact that are common to the actions previously transferred" to the MDL court. While the CTO was stayed the customary seven days from entry, Plaintiff timely filed a notice of opposition to MDL transfer with the Clerk of the Panel. Due to the notice of opposition, the stay will continue until further order of the Panel, during which time this Court's jurisdiction continues over the pending motion for remand. With this factual and procedural background in mind, the Court now turns to the merits of the motion to remand.

### B. *Standard of Review*

The removal statute provides in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any
> civil action brought in a State court of which the district courts of

---

[1] The matter pending before the Panel is MDL Docket No. 2418, *In Re Plavix® Marketing, Sales Practices and Prods. Liab. Litig. (No. II)*.

> the United States have original jurisdiction, may be removed by
> the defendant or the defendants, to the district court of the United
> States for the district and division embracing the place where such
> action is pending.

28 U.S.C. § 1441(a). A case may be remanded upon a motion filed within thirty days after the filing of the notice of removal on any defect except subject matter jurisdiction, which can be raised at any time by any party or *sua sponte* by the court. *See Wachovia Bank, N.A. v. PICC Prop. & Cas. Co.*, 328 F. App'x 946, 947 (5th Cir. 2009). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

### C. Discussion

As stated above, the case *sub judice* was removed to this Court on the purported grounds of (1) diversity jurisdiction, (2) federal question jurisdiction, and (3) jurisdiction under CAFA pursuant to 28 U.S.C. § 1332(d). The Court will examine each purported ground for removal in turn.

#### 1. Diversity Jurisdiction

First, Defendants argue that the action is removable based on diversity jurisdiction. At the outset, the Court addresses a threshold issue in the case: when considering whether the case is removable based on diversity, should this Court look to the original complaint or the amended complaint, which was filed the same day as the motion to remand? A plethora of case law demonstrates that the Court should look to the complaint at the time the petition for removal was filed. *See, e.g., Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S. Ct. 347, 348–49, 83 L. Ed. 334 (1939) ("The second amended complaint should not have been considered in determining the

right to remove, which in a case like the present one [removal based on diverse defendant's claim that controversy as to it was separable from claims against nondiverse defendants] was to be determined according to the plaintiffs' pleading at the time of the petition for removal.") (citations omitted); *Richey v. Wal-Mart Stores, Inc.*, 390 F. App'x 375, 377 (5th Cir. 2010) (per curiam) (quoting *Tex. Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000) ("When removal is based on diversity of citizenship, diversity must exist at the time of removal.")); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) ("[A] complaint amended post-removal cannot divest a federal court of jurisdiction."). The Fifth Circuit explained in *Cavallini*:

> The rationale for determining removal jurisdiction on the basis of claims in the state court complaint as it exists at the time of removal is obvious. Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved. Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.

44 F.3d at 264 (footnote omitted). Based on the foregoing, this Court will look to the whole of Plaintiff's original complaint, which was the current complaint at the time the removal petition was filed, to determine whether the case is removable based on diversity jurisdiction.

To satisfy their burden to establish federal diversity jurisdiction, Defendants must show that (1) a dispute has arisen between citizens of different states, and (2) the sum or value in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). The parties do not dispute that the amount in controversy is satisfied by Plaintiff's allegations in the original complaint, as Plaintiff seeks to recover civil penalties not to exceed $10,000 per statutory violation, disgorgement under the doctrine of unjust enrichment in the amount of

"hundreds of millions of dollars," interest, attorney's fees, and costs. *See* Pl.'s Compl. [2] ¶¶ 5.1, 5.35, 9.1. The parties dispute whether the parties are completely diverse. Plaintiff argues that it is bringing a *parens patriae* suit on behalf of the State of Mississippi under the MCPA, not a suit on behalf of the individual users of Plavix® under the MCPA, and that because the State is not a citizen for purposes of diversity jurisdiction, diversity is not a valid basis for removal. Defendants maintain that complete diversity of citizenship exists between the parties, because the real parties in interest to the suit are Mississippi citizens, who are all completely diverse from the Defendants, who are all non-Mississippi citizens.

To determine whether diversity exists, courts must examine the citizenship of the real parties to the controversy, and not the citizenship of nominal or formal parties. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980). Importantly, and for present purposes, "a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda County*, 411 U.S. 693, 717, 93 S. Ct. 1785, 36 L. Ed. 2d 596 (1973). Thus, "[a]s the government is not a citizen of any state, it is not considered in the complete diversity calculus." *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 626, 635 n.46 (5th Cir. 1985). If the face of Plaintiff's complaint as a whole demonstrates that the State is the sole party in interest, it follows that diversity jurisdiction cannot exist as a basis for removal. *See Mississippi v. AU Optronics Corp.*, 701 F.3d 796, 800 (5th Cir. 2012); *see also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012); *LG Display Co. v. Madigan*, 665 F.3d 768, 774 (7th Cir. 2011). Real parties in interest are those who "by substantive law, possess[ ] the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Richards v. Reed*, 611 F.2d 545, 546 n.2 (5th Cir. 1980) (inset quotations omitted); CHARLES ALAN WRIGHT & MARY KAY LANE, LAW OF FEDERAL COURTS 492 (6th ed. 2002).

Only suits brought by the attorney general involving a quasi-sovereign interest of the State and vindicating the State's own status within the federal system are properly brought as *parens patriae* suits. "Two non-sovereign interests, which would not provide a state with standing for a *parens patriae* action, are proprietary interests and private interests pursued by the state, where the state is only acting as a nominal party." *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 425–26 (5th Cir. 2008) (citing *Alfred L. Snapp & Son v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 601–02, 102 S. Ct. 3260, 73 L. Ed. 2d 995 (1982)). In *Snapp*, the United States Supreme Court explained:

> [A] State may, for a variety of reasons, attempt to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest. Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party.

*Id.* at 602, 102 S. Ct. 3260. In *Snapp*, the Court identified some interests which would justify a *parens patriae* suit on behalf of the State. For example, the Court stated that a State may bring a *parens patriae* action in "exercise of sovereign power over individuals and entities within the relevant jurisdiction—this involves the power to create and enforce a legal code, both civil and criminal . . . ." *Id.* at 601, 102 S. Ct. 3260. A State may also bring a *parens patriae* action to vindicate a "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.* at 607, 102 S. Ct. 3260. "One helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id.* at 607, 102 S. Ct. 3260.

> Obviously, a State might make use of "private bills" in order to use its legislative power to aid particular individuals. If the analogy spoken of above is to this form of legislative action, then the State remains merely a nominal party from the perspective of a federal court; it has failed to articulate any general interest, apart from that of the individual involved.

*Id.* at 607 n.14, 102 S. Ct. 3260. A suit in which the State is seeking only the remedy of injunctive relief presents a compelling argument that the State is the only real party in interest in a suit. *See Caldwell*, 536 F.3d at 430. *See, e.g., Massachusetts v. EPA*, 549 U.S. 497, 519–20, 127 S. Ct. 1438, 167 L. Ed. 2d 248 (2007) (state had special solicitude to bring *parens patriae* action against EPA to regulate greenhouse gas emissions from motor vehicles causing damage to its coastline and could endanger public health and welfare); *Hawaii v. Standard Oil Co. of Ca.*, 405 U.S. 251, 263–65, 92 S. Ct. 885, 31 L. Ed. 2d 184 (1972) (Clayton Act did not authorize state to sue for damages for an injury to its economy allegedly attributable to a violation of antitrust laws); *Caldwell*, 536 F.3d at 429–30 (state attorney general's antitrust suit seeking damages suffered by individual policyholders was not a *parens patriae* suit because the real parties in interest were the policyholders); *Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997), *cert. denied*, 522 U.S. 1089, 118 S. Ct. 879, 139 L. Ed. 2d 868 (1998) (state allowed to intervene in case brought by environmental group against city and other governmental and private entities, because state, as *parens patriae*, had interest in physical and economic health and well-being of its citizens directly affected by changes in the water level draw-downs at aquifer).

In the case *sub judice*, Plaintiff's original complaint alleges that Defendants engaged in unfair, false, and deceptive labeling and marketing of Plavix®, as well as a cover-up of mounting adverse efficacy of the drug and safety evidence, and that such conduct increased Plavix®'s sales and market share and in the process "bilked" purchasers, insurers, public healthcare providers,

public entities, and government payors, including the State of Mississippi, out of hundreds of millions of dollars—all in violation of the MCPA. Pl.'s Compl. [2] ¶ 5.35. It is helpful to look to the language of the MCPA to determine whether the State is the sole real party in interest in this suit.

The MCPA provides that the Attorney General may bring a suit in chancery or county court to obtain injunctive relief in the name of the State against a defendant for "the use of such method, act[,] or practice [as violates the MCPA]". MISS. CODE ANN. § 75-24-9. The MCPA further provides that an individual consumer may also bring an action under the MCPA, but "every private action must be maintained in the name of and for the sole use and benefit of the individual person." MISS. CODE ANN. § 75-24-15(4). With respect to monetary recovery for civil violations and penalties, the MCPA provides:

> [I]f the court finds from clear and convincing evidence, that a person knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by Section 75-24-5, the Attorney General, upon petition to the court, may recover on behalf of the state a civil penalty in a sum not to exceed Ten Thousand Dollars ($10,000.00) per violation. One-half (1/2) of said penalty shall be payable to the Office of Consumer Protection to be deposited into the Attorney General's special fund. All monies collected under this section shall be used by the Attorney General for consumer fraud education and investigative and enforcement operations of the Office of Consumer Protection. The other one-half (1/2) shall be payable to the General Fund of the State of Mississippi. The Attorney General may also recover, in addition to any other relief that may be provided in this section, investigative costs[,] and a reasonable attorney's fee.

MISS. CODE ANN. § 75-24-19(1)(b). From the language of the MCPA, it appears that Plaintiff's claims for injunctive relief and recovery of civil penalties, investigative costs, and a reasonable attorney's fee are properly brought in a *parens patriae* suit by the Attorney General on behalf of the State. However, Plaintiff's request for disgorgement in equity, coupled with the series of

9

different statements about the nature of the injury involved in the original complaint, lead the Court to conclude that this suit is one brought by Plaintiff on behalf of the State, as well as the individual Mississippi users or purchaser consumers of Plavix®.

Several statements throughout the complaint refer to the injury as a generalized harm to the State as a whole. *See* Pl.'s Compl. [2] ¶ 1.7 ("The claims asserted herein are brought solely by the State and are wholly independent of any claims that individual users of Plavix® may have against Defendants."); *id.* ¶ 2.1 ("The Attorney General brings this action on the State's behalf . . . pursuant to the positive statutory, common, and decisional law of the State, including . . . his *parens patriae* authority, which vests in him the right to [bring] all suits necessary for the enforcement of the laws of the State, preservation of order, and protection of public rights."); *id.* ¶ 6.4 ("Defendants are directly and jointly and severally liable to the State for penalties for which recovery is sought herein."); *id.* ¶ 8.2 ("[T]he State has suffered, and will continue to suffer, immediate and irreparable injury, loss, and damage.").

However, numerous other statements in the complaint indicate that the injury complained of was suffered by the user or purchaser consumer, as well as the State of Mississippi. *See id.* ¶ 1.6 ("Defendants' acts . . . disseminated and/or communicated to consumers and/or healthcare providers throughout Mississippi . . . ."); *id.* ¶ 5.22 ("At all relevant times, Defendants . . . purported to warn or . . . inform users throughout . . . Mississippi, regarding the benefits and risks associated with [Plavix®]."); *id.* ¶ 5.32 ("Defendants . . . continue to choose[] to put their corporate profits ahead of patients' safety . . . ."); *id.* ¶ 5.35 ("In short, Defendants bilked purchasers, including Mississippi patients, their insurers, public healthcare providers, public entities, and government payors, including Plaintiff, out of hundreds of millions of dollars . . . ."); *id.* ¶ 5.39 ("Defendants failed to disclose to the scientific community and the general public

facts sufficient to arouse suspicion . . . . Defendants' . . . scheme . . . deprived Mississippi patients, their insurers, public healthcare providers, public entities, and government payors, including Plaintiff, of . . . facts sufficient to put them on notice of potential claims."); *id.* ¶ 6.5 ("Defendants disseminated false and misleading information to the public, including Mississippi doctors and citizens, regarding the health risks associated with Plavix®."); *id.* ¶ 6.6 ("Those false and misleading representations and omissions tended to mislead or deceive Mississippi doctors and citizens, and . . . directly or indirectly affect[ed] the people of the State."); *id.* ¶ 6.9 ("false or misleading representation or material omission about the benefits and risks of Plavix® disseminated or communicated to Mississippi doctors, citizens, or the State . . . communicated to the State or its doctors and citizens"); *id.* ¶ 7.2 ("causing Defendants to receive a financial windfall from the State and from Mississippi consumers"); *id.* ¶ 7.3 ("[T]he State and Mississippi consumers conferred a benefit on Defendants."); *id.* ¶ 7.5 ("benefits conferred upon [Defendants] by the State and Mississippi consumers . . . [T]he State and consumers within the State should be made whole by application of the doctrine of unjust enrichment . . . ."). Also pertinent is the allegation that the Attorney General brings the action on the State's behalf in his capacity as the State's chief legal officer pursuant to the law of the State, "<u>including but not limited to</u> his *parens patriae* authority." *Id.* ¶ 2.1 (emphasis added).

In viewing the original complaint as a whole, the Court finds that the variety of allegations pled demonstrate that the real parties in interest include not only the State, but also individual consumers residing in Mississippi. Both the State, as a purchaser of Plavix®, and the individual citizens who purchased Plavix® within Mississippi, have rights sought to be enforced.

Further, although the State brings this suit pursuant to the MCPA, the MCPA does not give the State sole authority to recover for particularized injuries suffered by consumers. The

11

MCPA allows suit by the Attorney General on behalf of the State of Mississippi, Miss. Code Ann. § 75-24-9, but also allows suits on behalf of an individual consumer brought by the individual consumer, *id.* § 75-24-15(4). "In other words, the statute does not authorize public collection of private damages." *AU Optronics Corp.*, 701 F.3d at 801. For these reasons, the Court finds that the case *sub judice* is removable on the basis of diversity jurisdiction. Although the case is removable based on diversity, for the sake of thoroughness, the Court will also examine the other two purported bases of removal to federal court: federal question jurisdiction and jurisdiction under CAFA.

### 2. *Federal Question Jurisdiction*

Defendants further argue that the action is removable based on federal question jurisdiction. District courts have subject matter jurisdiction over cases involving federal questions—i.e., "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the "well-pleaded complaint rule," federal question jurisdiction is present "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law. *Id.*, 107 S. Ct. 2425.

A federal court also has federal question jurisdiction when the complaint presents "claims recognized under state law that nonetheless turn on substantial questions of federal law" which are "actually disputed and substantial" and "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg,*, 545 U.S. 308, 312, 314, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005). The type of federal question jurisdiction created by *Grable* only

applies to a "special and small category" of cases. *See Empire Healthchoice Assur. v. McVeigh*, 547 U.S. 677, 699, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006).

Plaintiff maintains that the case *sub judice* does not fall within the purview of federal question jurisdiction, as it exclusively seeks remedies under MCPA which "are founded upon the positive statutory, common, and decisional laws of the State." Pl.'s Compl. [2] ¶ 3.2. Plaintiff further maintains that federal jurisdiction would disturb state judicial responsibilities and that this case is best handled by the state court.

Defendants argue that the case *sub judice* presents a substantial and actually disputed federal question pertaining to federal Medicaid law and the Federal Food, Drug, and Cosmetic Act (the "FDCA") that must be answered to resolve the case. Defendants first argue that Plaintiff's MCPA claim necessarily implicates and will require the interpretation and application of federal Medicaid law, because Plaintiff seeks recovery for monies that government payors—including the State—paid for Plavix® through the State's Medicaid program that Plaintiff alleges government payors would not have incurred had they known the true and complete information pertaining to Plavix®. *See* Pl.'s Compl. [2] ¶ 5.6 (Defendants' alleged "false and misleading marketing messages primarily at healthcare profession[al]s whose patients relied upon public assistance programs such as Medicaid and Medicare"). Defendants maintain that Plaintiff is essentially alleging that government entities paid more in Medicaid funds for Plavix® than they should have paid, an allegation that turns on whether federal Medicaid laws would have permitted the State and counties to refuse to pay for Plavix® prescriptions, and, if so, under what circumstances. Defendants contend that Plaintiff can succeed on its claim only if it can prove that federal law would have permitted the State's Medicaid program to refuse to pay for Plavix®.

Defendants further argue that Plaintiff's false advertising and labeling claim is also implicitly premised on alleged violations of the FDCA, which will require a determination of whether Defendants engaged in practices prohibited under the FDCA, an issue that presents a federal question. Finally, Defendants argue that federal jurisdiction would not disturb state judicial responsibilities, because there is a significant federal interest in the resolution of the issues raised in Plaintiff's complaint, because they involve an interpretation and application of the FDCA as well as Medicaid laws, and because the claims in the suit implicate primarily federal funds, as most of Mississippi's Medicaid Program's funds are dispensed by the federal government.

In looking to Plaintiff's well-pleaded complaint, the Court finds that the primary issue raised in the complaint is whether Plavix® was marketed through false, fraudulent, and misleading practices. This issue does not hang on whether Defendants violated the FDCA and/or FDA regulations in their promotion and marketing of Plavix®, but whether Defendants violated Mississippi law in their promotion and marketing of Plavix®. This case does not present a federal question cloaked as state-law claims; instead, the case presents clear state-law claims for violations of the MCPA. Thus, in order to prevail in this litigation, Plaintiff will have to prove the elements of its state-law claims, but will not necessarily have to prove that any violation of federal laws occurred to prove the elements of its state-law claims. Therefore, Defendants' arguments that federal law controls the issue of whether the State could have avoided paying for Plavix® prescriptions that were the result of Defendants' marketing and promotion of Plavix® are unavailing. Such arguments merely create a defense, and defenses do not form a basis for federal question jurisdiction. *See Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) ("[t]hat federal law might provide a defense to a state law cause of action does not

create federal question jurisdiction"), *citing Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986) ("[a] defense that raises a federal question is inadequate to confer federal jurisdiction."). It is not necessary to resolve an issue of federal law in order to resolve Plaintiff's claims.

Further, there is no private right of action in the Federal Medicaid Act, and there is no private cause of action for FDCA violations. The fact that Congress provided no private right of action in the Federal Medicaid Act or in the FDCA presents compelling evidence that a finding of federal jurisdiction in this case would not be consistent with Congress's judgment regarding the sound division of labor between the state and federal courts. Also, a finding of federal jurisdiction over any state cause of action implicating provisions of the Federal Medicaid Act and its accompanying regulations could "attract [ ] a horde of original filings and removal cases raising other state claims with embedded federal issues." *Grable*, 545 U.S. at 318, 125 S. Ct. 2363. Under these circumstances, the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant case would not be "consistent with congressional judgment about the sound division of labor between state and federal courts." *Id.* at 313, 125 S. Ct. 2363.

In sum, Defendants have failed to meet their burden of establishing the existence of federal question jurisdiction. Plaintiff's complaint alleges only state-law claims, and Defendants have failed to demonstrate that the complaint alleges claims involving actually disputed and substantial federal issues that a federal court may entertain without disturbing the congressionally approved balance of federal and state judicial responsibilities. Accordingly, federal question jurisdiction is not a basis for removal in this action. However, as stated above, the Court finds that the case is removable on diversity grounds, and as stated below, the case is

also removable as a "mass action" under CAFA. Thus, despite the lack of a federal question, the case is properly in federal court.

### 3. *CAFA Jurisdiction*

Lastly, Defendants argue that the action is removable under CAFA as a "class action" under 28 U.S.C. § 1332(d)(1)(B) or a "mass action" under 28 U.S.C. § 1332(d)(11)(B). Defendants argue the case is removable under CAFA because (1) the Attorney General has effectively brought this representative suit as a mass or class action on behalf of the real parties in interest: more than 100 Mississippi citizens who purchased Plavix®, including Mississippi patients, their insurers, public healthcare providers, public entities, and government payors; (2) the claims involve common questions of law and fact that apply broadly to the case as a whole; (3) minimal diversity as required by CAFA exists here, because all of the individual consumers on whose behalf the action is brought are citizens of Mississippi, while Defendants are citizens of Delaware, New York, and New Jersey; and (4) the amount of controversy requirement under CAFA is met because the individual citizens' claims, when aggregated, seek recovery for "hundreds of millions of dollars," an amount that well exceeds the CAFA requirement. Defendants also argue that the "general public" exception does not apply in the case *sub judice*, because the "general public" exception applies only when all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class). In particular, Defendants maintain that Plaintiff's unjust enrichment claim in the original complaint seeks recovery on behalf of a discrete group of claimants and entities who paid for or were prescribed Plavix®—not on behalf of the public as a whole. *Id.* at 12.

Plaintiff maintains that CAFA does not support jurisdiction because the case is not a "mass action" as defined by CAFA and/or that the "general public" exception under CAFA

applies. Plaintiff further maintains that the case is not a "class action" as defined by CAFA because the statutory pleading requirements for a class action have not been, and cannot be, satisfied, as Mississippi law does not authorize class actions, and MCPA actions may not be brought as class actions under Mississippi law. *See* MISS. CODE ANN. § 75-24-15(4).

Removal to federal court is proper if the suit is a "class action" or "mass action" under CAFA. 28 U.S.C. §§ 1453(b), 1332(d)(11)(A). Under CAFA, "class action" is defined as "any civil action filed under [R]ule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by [one] or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Plaintiff did not bring this suit under Rule 23 of the Federal Rules of Civil Procedure or a rule of judicial procedure, and Mississippi law precludes class actions, *see Am. Bankers Ins. Co. of Fla. v. Booth*, 830 So. 2d 1205, 1214 (Miss. 2002). Thus, the only question is whether the suit is brought under a state statute similar to Rule 23. The suit was brought under the MCPA, which forbids class actions, *see* Miss. Code Ann. § 75-24-15(4), and thus cannot be viewed as "similar" to Rule 23. Therefore, the Court finds that the suit does not qualify as a "class action" under CAFA. The Court now turns to the question of whether the suit qualifies as a "mass action" under CAFA.

CAFA defines a "mass action" as "any civil action . . . in which [1] monetary relief claims of [2] 100 or more persons [3] are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact" and [4] include an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(d)(11)(B)(i). As stated above, the original complaint sought monetary relief in the form of civil penalties, disgorgement due to unjust enrichment, interest, attorney's fees, and costs. As also stated above, it is undisputed that the relief sought satisfies the amount in controversy requirement. Thus, to determine whether this

case is removable as a "mass action" under CAFA, the suit must present the claims of 100 or more persons. The Court has already found that the State and citizens of Mississippi are the real parties in interest to the suit and that the number of the citizens exceeds 100. But one thorny issue remains—whether even if the suit otherwise fits the criteria of a "mass action" under CAFA, it nonetheless is not a mass action because it falls within the "general public" exception of CAFA, which provides:

> [T]he term "mass action" shall not include any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action.

*See* 28 U.S.C. § 1332(d)(11)(B)(ii)(III). The Fifth Circuit recently stated in *AU Optronics* that "[t]he requirement that 'all of the claims' be asserted on behalf of the public is not met [where] individual consumers, in addition to the State, are real parties in interest, so there is no way that 'all of the claims' are 'asserted on behalf of the general public.' " 701 F.3d at 802; *but see id.* at 807, 808 (Elrod, J., concurring in judgment) ("If we deny the applicability of the general public exception when individual consumers are parties in interest, then, as a practical matter, we will have eliminated the exception in this circuit. . . . Under this framework, it is difficult to imagine a case that could be a mass action that also falls within the general public exception. . . In essence, our precedent has created a situation in which a case cannot satisfy the criteria of both the mass action provision and the general public exception. . . . [W]e should reconsider that precedent and adopt a different approach for analyzing the removal of *parens patriae* suits under CAFA."). The Court is mindful that on May 28, 2013, the United States Supreme Court granted certiorari to resolve a circuit split on the question of whether a state's *parens patriae* action is removable as a "mass action" under CAFA when the state is the sole plaintiff and the claims

arise under state law. *See AU Optronics Corp.*, ___ S. Ct. ___, 2013 WL 655204. Because this issue has not been resolved, this Court must follow current controlling precedent in the Fifth Circuit. In so doing, the Court holds that the case *sub judice* is properly removed to federal court pursuant to CAFA because it is a "mass action": the civil action involves the monetary claims of 100 or more Mississippi citizens; the claims involve common questions of law or fact; and the amount in controversy is stated to be in the hundreds of millions of dollars. *See* 28 U.S.C. § 1332(d)(11)(B)(i); *AU Optronics Corp.*, 701 F.3d at 801–02; *Caldwell*, 546 F.3d at 430. The "general public" exception does not apply, because the case is brought on behalf of the State and the users or purchaser consumers of Plavix®, not the general public. Thus, the case *sub judice* is removable as a mass action under CAFA.

### D. Conclusion

In sum, the Court finds that the Plaintiff's motion to remand [22] shall be DENIED. The case is removable on the basis of diversity jurisdiction and as a "mass action" under CAFA.

An order in accordance with this opinion shall issue this day.

THIS, the 27 day of June, 2013.

_____
SENIOR JUDGE